LEACH (Case No. 8,156) [15 Fed. Cas. page 96]

v. Andrews [unreported]; Candee v. Deere, 54 Ill. 439; Singer Manuf'g Co. v. Wilson. 2 Ch. Div. 434; Cocks v. Chandler, L. R. 11 Eq. 446; Ford v. Foster, 7 Ch. App. 611; Burke v. Cassin, 45 Cal. 467; Burnett v. Phalon, 9 Bosw. 192; Bininger v. Wattles, 28 How. Pr. 206; Singleton v. Bolton, 3 Doug. 293; Canham v. Jones, 2 Ves. & B. 218. But see Newman v. Alvord, 49 Barb. 588; Congress & E. Spring Co. v. High Rock C. Spring Co., 45 N. Y. 291; Dunbar v. Glenn, 42 Wis. 118; Wotherspoon v. Currie, L. R. 5 H. L. 508. There can be no trademark in the name "Singer Sewing Machine." Singer Manuf'g Co. v. Larsen [Case No. 12,902]. The word "Parabola" used as the name of needles. not being descriptive of any peculiar quality of the needles. is a valid trademark. Roberts v. Sheldon [Id. 11,916]. So the term "Yankee," applied as the name or label upon soap, is a valid trade-mark. Williams v. Adams [Id. 17,711].

[For other cases involving this litigation, see Cases Nos. 3,695, 3,696, and 3 Fed. 435, and 13 Fed. 514.]

LEA (DEAKIN v.). See Cases Nos. 3.695 and 3,696.

LEA (FARLOW v.). See Case No. 4,649.

LEA v. LEEDS. See Case No. 2,862.

## Case No. 8,155.

Ex parte LEACH.

[3 App. Comr. Pat. 267.]

Circuit Court, District of Columbia. March 1, 1860.

PATENTS—PATENTABLE NOVELTY—WEATHER STRIPS.

[Leach's claim of invention of weather strips of India rubber or other flexible material of a semi cylindrical shape. with flanged sides or edges for tacking against the door or window frame, possesses patentable novelty. and is not anticipated by inventions of weather strips which require grooves in the doors, etc., for fastening them.]

[Appeal by Phineas Leach from the decision of the commissioner of patents, rejecting his claim for a patent for an improvement in weather strips for doors, etc.]

MERRICK, Circuit Judge. The claim in this case is for an improvement in weather strips for doors and windows, which consists in making the strips of India rubber or like flexible and elastic material moulded into a semi-cylindrical shape with flanged sides or edges, so that. when fastened by tacks driven into the door at suitable intervals along the flanged sides, it shall form a semi-cylindrical tube, fitting the crevice between the door and its frame, and by its elasticity, adapting itself to any irregularities in the dimensions or shape of the crevice, thereby completely exclude air, etc. If the claim be regarded as a device for excluding air, etc., from the crevices at the sides of doors and windows by adjusting to them strips of elastic rubber. or strips of rubber rendered specially flexible and elastic by reason of their tubular form, the invention of the applicant is clearly anticipated by the references to Alvord's, Hackett's,

and Burstadt's rejected claims. But the amended claim of Leach does not rest upon the principle involved in those cases. The merit of his invention consists in the ease and simplicity with which the attachment is effected of an elastic tube to the cracks and openings around a door; which, while it secures the tube firmly in its place, dispenses with the troublesome and expensive construction of a groove in the door or against the door post, which is essential in the invention of Alvord and Hackett, where an entirely cylindrical tube is used. The invention of Leach is, then, a substantial change in the shape and construction of elastic tubular strips, by means of which change of construction the strips can easily and cheaply be applied to doors without injury thereto, not requiring the aid of a carpenter, and demanding no other expenditure of time or money in the adjustment than a few moments of the house maid's leisure, and the cost of thirty or forty carpet tacks. This degree of utility and economy appearing from the claim, although it may not place the inventor upon a very lofty pedestal of fame, affords sufficient evidence of the exercise of the inventive faculty to entitle him to the protection of the patent laws.

Now, for the reasons aforesaid, I am of opinion, and accordingly certify to the Hon. Philip F. Thomas, commissioner of patents, that there is error in the decision of the office rejecting the claim of the applicant; and said judgment is hereby reversed, and a patent directed to be issued to Phineas Leach upon his amended application as prayed.